UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Gary Pellant and Randall Johnson,<br><br>        Plaintiffs,<br><br>  v.<br><br>Detroit Tigers Inc.<br><br>        Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiffs Gary Pellant and Randall Johnson allege as follows.

## Parties

1. Plaintiff, Gary Pellant, is an individual who is a citizen of Arizona.

2. Plaintiff Randall Johnson is an individual who is a citizen of California.

3. Defendant, Detroit Tigers Inc. is a Florida corporation whose business address is The Detroit Tigers, Comerica Park, 2100 Woodward Ave., Detroit, MI 48201-3474.

4. Detroit Tigers Inc. may be served by serving its statutory agent, CT Corporation System, at 1200 South Pine Island Road Plantation, FL 33324.

5. Detroit Tigers Inc. was Plaintiffs' employer, as defined under the Age Discrimination and Enforcement Act ("ADEA").

6. Detroit Tigers Inc. was Plaintiffs' joint employer under the ADEA.

1 | P a g e

**PLAINTIFFS ORIGINAL COMPLAINT**

## Jurisdiction and Venue

7. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff asserts claims under the Age Discrimination in Employment Act. 29 U.S.C. §621, et. seq. ("ADEA"). This Court has supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. 28 U.S. Code § 1367.

8. The Court has general personal jurisdiction over the Defendant because it is an incorporated entity with its principal place of business in Detroit, Michigan, within this District and Division

9. The Eastern District of Michigan, Southern Division, is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because the Detroit Tigers Inc. are located in this District and Division and conduct business in this District and Division by playing, officiating, or otherwise conducting Major League baseball games in this District.

10. In addition, a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District and Division.

**PLAINTIFFS ORIGINAL COMPLAINT**

## Exhaustion of Administrative Remedies

11. Plaintiffs timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC).

12. Plaintiffs file this complaint within 90 days after receiving notice of the right to sue from the EEOC. A copy of Pellant's notice of the right to sue is attached as Exhibit A. Plaintiff Johnson filed a charge of discrimination with the EEOC on June 21, 2021 and has waited 60 days for processing, but has not received a right to sue letter.

## Nature of the Action

13. Plaintiff Gary Pellant is 68 years old and resides in Chandler, Arizona.

14. Plaintiff Randall Johnson is 67 years old, and resides in Valley Center, California.

15. Messrs. Pellant and Johnson worked as Scouts for multiple Major League Baseball Clubs for over 20 years before their termination, effective October 31, 2020, as Scouts for the Detroit Tigers.

16. Plaintiffs were employees of Detroit Tigers Inc. within the meaning of the ADEA.

17. Detroit Tigers Inc. was an employer of Plaintiffs within the meaning of the ADEA because it is engaged in an industry affecting commerce and had 20 or

**PLAINTIFFS ORIGINAL COMPLAINT**

more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

18. Plaintiffs were also employees of Detroit Tigers Inc. within the meaning of the ADEA.

19. Detroit Tigers Inc. paid Plaintiffs as employees.

20. Detroit Tigers Inc. issued Plaintiffs a W2.

21. Plaintiffs belong to the class of employees protected under the ADEA, namely, employees over the age of 40. 29 U.S.C. §§630(f), 631(a).

22. Defendant was able to exercise control over Plaintiffs by directing Plaintiffs where, when, and how to work.

23. Defendant regularly employs professional baseball Scouts each year typically from October 31 of a given year to March of the next year.

24. Scouts are generally sought to evaluate the talent of amateur athletes, as well as professional athletes under an existing contract.

25. The basic job of a Scout is to evaluate players' skills. They do so while attending games—at high schools and colleges, and at international games, minor league games and sometimes major league games.

26. Scouts do this sometimes thousands of miles, and countless hours away, from their homes.

**PLAINTIFFS ORIGINAL COMPLAINT**

27. Some Scouts focus more on amateur players while others focus more on professional players. However, the basic job of a Scout remains the same - to evaluate players and present this information in reports.

28. Defendant is one of 30 members of a league called the Major League Baseball league ("MLB").

29. Each member is a club, and each team employs individuals tasked with evaluating the talent of professional baseball players.

30. Plaintiffs are among hundreds if not thousands of employees to be separated from employment with Defendant in the last eight years as a result of a decision by the Defendant and the MLB to replace older employees with younger employees.

31. On January 25, 2015, Robert Manfred succeeded Bud Selig as commissioner of MLB.

32. At that time, MLB began an initiative to reform itself by relying on analytics and video Scouting as the primary focus of Scouts.

33. As part of the reform process, MLB endeavored to begin heavily recruiting younger Scouts, at the same time intentionally pushing out, from the older Scouts with prior knowledge, qualifications, expertise, and training, based on a false stereotype that older Scouts lacked the ability to use analytics and engage in video Scouting with the same acumen as younger Scouts.

**PLAINTIFFS ORIGINAL COMPLAINT**

34. Defendant intentionally discriminated against Plaintiffs because of their age in violation of the ADEA by terminating them on or about, November 1st, 2020.

35. On or about October 31, 2020, Defendant purged their older employees by dismissing at least (4) older Scouts over 60 years of age, two of whom were Plaintiffs.

36. The remaining Scouts were younger, ranging from early 20's to early 50's.

37. Defendant claims they terminated Plaintiffs due to the financial hardship from the COVID-19 Pandemic.

38. However, Defendant failed to request a PPP Loan that would allow for retention of employees.

39. Also, Defendant was profitable both during and after the COVID-19 Pandemic.

40. COVID-19 was a pretextual reason to terminate Plaintiffs' employment.

41. Defendant terminated Plaintiffs due to their age in violation of the ADEA.

42. Even if Defendant did not specifically terminate Plaintiffs due to their age, Defendants' stated desire to hire Scouts that were more adept with technology

**PLAINTIFFS ORIGINAL COMPLAINT**

was based on an age stereotype and had a disparate impact on older Scouts, including Plaintiffs.

43. With some exceptions, based on Defendant's application of Major League Rule 3(k) in regard to Scouts, a Scout is stuck with his or her club employer until the club terminates the Scout.

44. In 2020, 2021 and 2022, based on Defendant's application of Rule 3(k), hundreds of Scouts' contracts were not renewed, or Scouts otherwise had their employment terminated.

45. Defendant subsequently acted to prevent the reemployment of older Scouts or refused the reemployment of older Scouts.

46. This has involved disparate treatment of, and/or disparate impact upon, older Scouts because they were not being reemployed and have been effectively and intentionally frozen out of the Scout labor market to an extent not applicable to younger Scouts.

47. Between February 2020 and 2022, the Defendant used the COVID-19 pandemic to justify the termination of employment of Plaintiffs and others.

48. In 2020, all 30 MLB Clubs did not renew or otherwise terminate the contracts for no less than 51 of at least 83 older Scouts.

49. Older Scouts expected to be eligible to be rehired after the pandemic ended.

**PLAINTIFFS ORIGINAL COMPLAINT**

50. However, even since the pandemic ended and revenues returned, older Scouts like Plaintiffs are being systematically denied reemployment, including through the use of a list or lists and an agreement, pattern, practice, and effective rule to maintain lower numbers of older Scouts throughout Major League Baseball. Accordingly, Defendant's post-termination actions are both separately actionable and have also destroyed and/or hindered Plaintiffs ability to mitigate damages

## Count One

### (Wrongful Termination in Violation of the ADEA)

51. As a direct and proximate result of Defendant's conduct, which constitutes disparate treatment age discrimination and/or disparate impact age discrimination in violation of the ADEA, Plaintiffs suffered the following injuries and damages.

52. Plaintiffs were wrongfully discharged from employment with Defendant.

53. Although Plaintiffs have diligently sought other employment, they have been unable to find jobs at comparable pay.

54. Plaintiffs have incurred expenses in seeking other employment.

55. Plaintiffs suffered loss of their pension or retirement benefits or have had to utilize the same in an earlier manner that subjects Plaintiffs to penalties of monetary value, and compensatory damages.

**PLAINTIFFS ORIGINAL COMPLAINT**

56. Plaintiffs seek compensation for all lost wages and benefits, including loss of retirement benefits.

57. Reinstatement of plaintiffs in their previous position is impractical and unworkable. Therefore, plaintiffs seek an award of front pay and retirement benefits to compensate them.

58. Defendant's conduct was intentional and willful violation of the ADEA.

59. Plaintiffs are entitled to an award of liquidated damages within the meaning of the ADEA. See 29 U.S.C. § 626(b).

60. Plaintiffs are entitled to an award of attorney fees and costs under the ADEA. 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b).

## Count Two

### (Post-Termination Employment Interference in Violation of the ADEA

61. Post-termination conduct to retaliate against a former employee is actionable under other whistleblower and employment retaliation laws. For example, in *Veprinsky v. Fluor Daniel*, Inc., the United States Court of Appeals for the Seventh Circuit held that retaliatory acts that occur after termination and either connect to employment or encroach on future employment are actionable under anti-retaliation provisions of Title VII of the Civil Rights Act of 1964. *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888 (7th Cir.1996). The Eighth Circuit

has likewise held that post-termination conduct may constitute "adverse employment actions: if it has a 'tangible adverse effect' on the terms and conditions of the plaintiff's current or prospective employment." *Waters v. Home Depot U.S.A., Inc.,* 159 Fed.Appx. 943, 944 (11th Cir.2005) (ADA claim).

62. Although Plaintiffs have diligently sought other employment, they have been unable to find jobs at comparable pay.

63. Plaintiffs have incurred expenses in seeking other employment.

64. Plaintiffs suffered loss of their pension or retirement benefits or have had to utilize the same in an earlier manner that subjects Plaintiffs to penalties of monetary value, and compensatory damages.

65. Plaintiffs seek compensation for all lost wages and benefits, including loss of retirement benefits.

66. Defendant's conduct was intentional and willful violation of the ADEA.

67. Plaintiffs are entitled to an award of liquidated damages within the meaning of the ADEA. See 29 U.S.C. § 626(b).

68. Plaintiffs are entitled to an award of attorney fees and costs under the ADEA. 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b)

### Count Three

### (Violations of Elliott-Larsen Civil Rights Act)

**PLAINTIFFS ORIGINAL COMPLAINT**

69. As a direct and proximate result of Defendant's conduct, which constitutes disparate treatment age discrimination and/or disparate impact age discrimination in violation of the Elliott-Larsen Civil Rights Act, Plaintiffs suffered the following injuries and damages.

69. Plaintiffs were wrongfully discharged from employment with Defendant.

70. Although Plaintiffs have diligently sought other employment, they have been unable to find jobs at comparable pay.

71. Plaintiffs have incurred expenses in seeking other employment.

72. Plaintiffs suffered loss of their pension or retirement benefits or have had to utilize the same in an earlier manner that subjects Plaintiffs to penalties of monetary value, and compensatory damages.

73. Plaintiffs seek compensation for all lost wages and benefits, including loss of retirement benefits.

74. Reinstatement of plaintiffs in their previous position is impractical and unworkable. Therefore, plaintiffs seek an award of front pay and retirement benefits to compensate them.

75. Defendant's conduct was intentional and willful violation of the Elliott-Larsen Civil Rights Act.

**PLAINTIFFS ORIGINAL COMPLAINT**

## Jury Demand

76. Plaintiffs request a trial by jury on all claims and issues so triable.

## Relief Sought

**WHEREFORE**, Plaintiffs requests that this Court grant the following relief:

a. Find that Defendant violated the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq.

b. Find that Defendant violated the Elliot-Larsen Civil Rights Act.

c. Award back pay and front pay in an amount according to be determined by the jury (or to the extent that Front Pay is an equitable recovery, in an amount to be determined by the Court);

d. Award compensatory damages, as allowed by law, in an amount according to be determined by the jury;

e. Award punitive damages, as allowed by law, in an amount to be determined by the jury;

f. Award all attorney's fees and costs incurred prosecuting this action under the ADEA;

g. Award liquidated damages under the ADEA;

h. Award pre-judgment and post-judgment interest at the maximum amount allowable by law; and

**PLAINTIFFS ORIGINAL COMPLAINT**

i. Grant other relief to which Plaintiffs may be entitled in law or equity.

        Respectfully submitted,

        */s/ Robert E. Goodman, Jr.*
        Robert E. Goodman, Jr.
        State Bar No. 08158100
        reg@kilgorelaw.com

        Mitchell C. Abeita
        State Bar No. 24103694
        mca@kilgorelaw.com

        Eric N. Roberson
        State Bar No. 00792803
        enr@kilgorelaw.com
        Kilgore & Kilgore, PLLC
        3141 Hood Street, Suite 500
        Dallas, Texas 75219
        (214) 979-9699
        (214) 379-0840

        Raymond J. Carey (P29141)
        Raymond J. Carey & Associates, PLLC
        30500 Northwestern Hwy., Suite 425
        Farmington Hills, MI 48334
        (248) 865-0001
        rcarey@work-lawyers.com

        **ATTORNEYS FOR PLAINTIFFS**

**PLAINTIFFS ORIGINAL COMPLAINT**