UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY PELLANT and
RANDALL JOHNSON,

    Plaintiffs,

v.

DETROIT TIGERS, INC.,

    Defendant.
_____/

Case No. 2:23-cv-13288
Hon. Brandy R. McMillion

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (ECF NO. 6), STAYING THE CASE, AND CLOSING CASE ADMINISTRATIVELY

Before the Court is Defendant Detroit Tigers, Inc.'s ("the Tigers") Motion to Dismiss (ECF No. 6). For the reasons below, the Court will **GRANT IN PART AND DENY IN PART** the Tigers' Motion to Dismiss (ECF No. 6), **STAY** the case pending resolution of the earlier filed litigation now pending in the United States District Court for the Southern District of New York, and **CLOSE THE CASE ADMINISTRATIVELY**.

I.

This case concerns alleged age discrimination against professional baseball scouts. A few initial matters bear mentioning. First, there are three cases that are relevant to this Motion: (1) D. Colo. Case No. 23-cv-01563 ("the Colorado case");

1

(2) this case, E.D. Mich. Case No. 23-cv-13288 ("the Michigan case"); and (3) S.D.N.Y. Case No. 24-cv-04314 ("the New York case"). The Colorado case was transferred to the Southern District of New York and became the New York case.[1]

Next, it is important to understand the "first-to-file" rule. That rule says that when two actions involving similar parties and issues are filed in two separate district courts, the case filed first should generally be the one to proceed. *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). Three factors govern application of the first-to-file rule: (1) which complaint was filed first, (2) the similarity of the parties, and (3) the similarity of the issues and claims. *Id.* Equitable considerations are also relevant, even if all three factors support applying the rule. *Id.* Here, the Colorado case (eventually transferred to New York) was filed before the Michigan case.

Additionally, it is worth explaining how scouting works in baseball. Major League Baseball ("MLB" or "the League") teams hire scouts through an informal process. D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.16-17. If a team is interested in hiring a scout, they typically (and informally) reach out to the scout. *Id.* There are no formal job postings or advertisements, so getting a job as a scout is

---

[1] The complaint in the New York case is largely the same as the complaint in the Colorado case, minus the various state-law claims initially raised in the Colorado case. At times, the Court will refer to the class action filed in Colorado and transferred to New York as the "Colorado-New York case."

"about networking" and attending "formal and informal meetings" like MLB annual meetings. *Id.* Baseball scouts "evaluate players' skills" and do so across the world and at all levels of the game—high school, college, international, minor league, and major league. *See* E.D. Mich. Case No. 23-cv-13288, ECF No. 1, PageID.4. Many scouts—including the older scouts here—use statistical analysis to evaluate players. *See* D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.23. But teams are increasingly relying on "analytics" and video scouting to complete these evaluations. *Id.* at PageID.13. Scouts evaluate players on a scale and present their evaluations to the teams in reports. *See* E.D. Mich. Case No. 23-cv-13288, ECF No. 1, PageID.5; D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.14. Notably, scouts do not make personnel decisions—those decisions are reserved for the "front office" staff of each MLB team. D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.14.

A.  **The Colorado Complaint**

On June 21, 2023, 17 former MLB scouts (over the age of 40 who worked for one or more of the 30 MLB teams) filed a collective class action complaint in the United States District Court for the District of Colorado. D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.2.[2] They alleged in their initial complaint that the teams denied them reemployment based on their age, in violation of the Age

---

[2] Included in those 17 plaintiffs was currently named Plaintiff Randall Johnson. As will be explained in more detail later, Plaintiff Gary Pellant was not added as a plaintiff until a later amended complaint was filed.

3

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* as well as various state law discrimination statutes. *See generally* D. Colo. Case No. 23-cv-01563, ECF No. 1.

The Colorado plaintiffs were among "thousands of MLB and Club employees separated from employment" with the defendant teams in the last eight years after the MLB and the individual teams decided to replace older employees with younger ones. D. Colo. Case No. 23-cv-01563, ECF No.1, PageID.13. The new MLB commissioner, Robert Manfred ("the Commissioner"), wanted scouts to focus more on "analytics" and "video scouting." *Id.* This, the plaintiffs alleged, led the MLB to "heavily recruit[]" younger scouts and simultaneously and "intentionally push[] out" the older ones. *Id.* The MLB based its decision, the plaintiffs say, on a "false stereotype" that older scouts "lacked the ability" to use analytics and video scouting with the same skill level as younger scouts. *Id.*

Alleging that the League and teams have "coordinated their behavior" and "implemented a pattern, practice and *de facto* rule," the Colorado plaintiffs claimed that the defendants applied rules to the scouts that were only applicable to players, coaches, managers, and umpires. D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.15-16. They applied those rules to "prohibit[] communication about job opportunities while a Scout is under contract with a Club." *Id.* The plaintiffs claimed this practice was anti-competitive, "inhibit[ed] lateral hiring," and

4

"restrain[ed] the Scout labor market." *Id.* at PageID.16. It had the effect of rendering a scout "stuck with his or her Club employer until the Club terminate[d] the Scout." *Id.* at PageID.17.

The Colorado plaintiffs alleged that in 2020, 2021, and 2022, the age discrimination presented in several ways. First, the defendants applied "Rule 3(k)"—a rule thought to only prohibit employment-related discussions between teams and players, coaches, managers, or umpires employed by other teams—to scouts to either decline to renew their contracts or terminate them. D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.17. Second, the League and teams "prevent[ed] the reemployment of Older Scouts" or refused to reemploy them. *Id.* According to the Colorado plaintiffs, the teams maintained a list of "Senior Scouts formerly associated with one or more Clubs" and "used [it] to refuse to rehire" those scouts. *Id.* at PageID.21. Additionally, directives from the Commissioner's office "frustrat[ed] or otherwise prevent[ed] the rehiring" of scouts. *Id.* And last, teams maintained a list of older scouts "who cannot be hired back into professional baseball" because of their age; and certain plaintiffs were told by teams that they could not apply for new jobs "based on such a list." *Id.*

The Colorado plaintiffs raise two forms of pretext for firing older scouts: (1) the COVID-19 pandemic and (2) the rising use of analytics in scouting. D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.22-23. Of the 83 older scouts, the teams

5

"did not renew or otherwise terminate[d]" the contract for 51 of them. *Id.* at PageID.22. Those older scouts affected were told their terminations "related to the COVID-19 pandemic." *Id.* at PageID.23. Despite their terminations, the older scouts "expected to be eligible to be rehired" once the pandemic ended, whether by the team that previously employed them or another. *Id.* But, since the end of the pandemic, the older scouts have been "systematically denied reemployment" throughout the League. *Id.* at PageID.22, 23-25.

The Colorado plaintiffs also rejected any claim by the defendants that the older scouts were not reemployed because of the "change to an 'analytical' approach to evaluating players." D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.23. The plaintiffs saw the use of analytics as a pretext for age-based firing because many older scouts use statistics instead of analytics when evaluating players. *Id.* They further allege that there was a "false stereotype that Older Scouts lacked the ability to use analytics" with the same skill as younger scouts. *Id.* at PageID.13.

**B.     The Michigan Complaint**

In the Michigan complaint—filed on December 27, 2023 (just over six months after the Colorado case)—Plaintiffs allege they are among several employees fired by the Tigers in the last eight years after the Tigers and the MLB decided to "replace older employees with younger" ones. E.D. Mich. Case No. 23-cv-13288, ECF No. 1, PageID.5. At the time of filing, Michigan Plaintiffs Randall Johnson ("Johnson")

6

and Gary Pellant ("Pellant," collectively "Plaintiffs") were 67 and 68 years old, respectively. *Id.* at PageID.3.  The Court notes that much of the language in the Complaint for the Michigan case mirrors that in the Colorado case. *Compare* D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.13-14, ¶¶ 57-58 *with* E.D. Mich. Case No. 23-cv-13288, ECF No. 1, PageID.4-5, ¶¶ 25-27, 30-33.

Plaintiffs contend that the MLB sought to "reform itself by relying on analytics" and having scouts primarily focus on "video scouting." E.D. Mich. Case No. 23-cv-13288, ECF No. 1, PageID.5.  Like in the Colorado complaint, Plaintiffs here allege that this initiative led the MLB to "heavily recruit[] younger [s]couts" while simultaneously—and intentionally—"pushing out" the older scouts. *Id.*  This conduct was "based on a false stereotype" that the older scouts lacked the ability to "use analytics and engage in video [s]couting" with the same skill as younger scouts. *Id.*

In late October 2020, the Tigers "purged their older employees," dismissing at least four scouts over the age of 60, including Plaintiffs. E.D. Mich. Case No. 23-cv-13288, ECF No. 1, PageID.6.  Those scouts remaining with the Tigers were younger (with ages ranging from early 20s to early 50s). *Id.*  The Tigers claim pandemic-induced "financial hardship" was to blame for Plaintiffs' termination. *Id.* But Plaintiffs allege that not only was the team profitable during and after the pandemic, the Tigers did nothing to obtain a loan that would have allowed retention

7

of employees. *Id.* Thus, Plaintiffs allege, the Tigers really fired Plaintiffs because of their age and COVID-19 was just a "pretextual reason" for Plaintiffs' termination. *Id.* Plaintiffs also allege that even if the Tigers did not fire them specifically because of their age, it played a role because the Tigers' interest in hiring more technologically adept scouts was "based on an age stereotype and had a disparate impact on older [s]couts, including Plaintiffs." *Id.* at PageID.6-7.

"With some exceptions," the Tigers' application of MLB Rule 3(k)[3] resulted in scouts remaining "stuck with his or her club employer" until terminated by the team. E.D. Mich. Case No. 23-cv-13288, ECF No. 1, PageID.7. Thus, in 2020, 2021, and 2022, hundreds of scouts either did not receive contract renewals or were terminated based on the Tigers' application of Rule 3(k). *Id.* Then, Plaintiffs allege, the Tigers either "prevent[ed] the reemployment" of older scouts or "refused" to reemploy them. *Id.* This involved the disparate treatment of, or a disparate impact upon, the older scouts because "they were not being reemployed" and they were "effectively and intentionally frozen out of the [s]cout labor market to an extent not applicable to younger [s]couts." *Id.*

---

[3] Plaintiffs do not provide the language of Rule 3(k) in their Michigan complaint or in the current briefing. *See generally* ECF Nos. 1 (complaint), 10 (response to motion to dismiss). But as detailed before, MLB Rule 3(k) prohibits employment-related discussions between teams and players, coaches, managers, or umpires. D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.15. Plaintiffs in the Colorado case claim that the teams and League "expressly or impliedly agreed" to apply Rule 3(k) to scouts. *See id.* at PageID.15-17. And in both cases, the plaintiffs allege that the teams—including the Tigers—applied Rule 3(k) to the detriment of scouts. *See id.*; E.D. Mich. Case No. 23-cv-13288, PageID.7.

Plaintiffs allege that for two years ("[b]etween February 2020 and 2022") the Tigers relied on COVID-19 to terminate the employment of Plaintiffs and others. E.D. Mich. Case No. 23-cv-13288, ECF No. 1, PageID.7.  In 2020 alone, all 30 MLB teams either did not renew or terminated the contracts of "no less than 51 of at least 83" older scouts.  *Id.*  And Plaintiffs allege that although older scouts "expected to be eligible" for rehiring after the pandemic, they are "being systematically denied reemployment," despite the end of the pandemic and improved revenues.  *Id.* at PageID.7-8.  Plaintiffs allege that this systematic denial came about "through the use of a list or lists and an agreement, pattern, practice, and effective rule to maintain lower numbers" of older scouts in the MLB.  *Id.* at PageID.8.

**C.     Procedural History**

As noted, the Colorado case was filed first, on June 21, 2023.  *See* D. Colo. Case No. 23-cv-01563, ECF No. 1.  Johnson was a plaintiff in the Colorado case from the beginning.  *Id.*  Pellant was not added as a plaintiff until the fourth amended complaint, which was filed on January 30, 2024.  *See id.*, ECF Nos. 50-1 (third amended complaint without Pellant) and ECF No. 60 (fourth amended complaint adding Pellant and others).  The Tigers were named in the original complaint as a defendant in the Colorado case.  *See id.*, ECF No. 1.  And the Colorado case raised an age discrimination claim under ADEA, on a class-wide basis (Count I), and a

9

myriad of state-law age discrimination claims—but none under Michigan law. *See generally* D. Colo. Case No. 23-cv-01563, ECF Nos. 1, 6, 26, 59, 60.[4]

Plaintiffs Johnson and Pellant then filed the Michigan case against the Tigers on December 27, 2023, six months after the Colorado case was filed. *See* E.D. Mich. Case No. 23-cv-13288, ECF No. 1. Their Complaint in this case raises three claims: (1) wrongful termination under the ADEA; (2) post-termination employment interference in violation of the ADEA; and (3) a state-law claim for age discrimination under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2201 *et seq. Id.*

After the Colorado plaintiffs filed their fourth amended complaint in January 2024, the defendants moved to dismiss for lack of personal jurisdiction and improper venue in February 2024. D. Colo. Case No. 23-cv-01563, ECF No. 63. In March 2024, the Tigers then moved in the Michigan case to dismiss under the "first-to-file" rule or, alternatively, for a stay. E.D. Mich. Case No. 23-cv-13288, ECF No. 6. The Tigers contend that under that rule, the Michigan case should be dismissed because the Colorado case was filed first. *Id.* The Tigers' Motion to Dismiss was fully briefed by mid-April 2024. *Id.* at ECF Nos. 10, 11.

---

[4] The initial complaint and the first and second amended complaints each contained age discrimination claims under state law. *See id.*, ECF Nos. 1, 6, 26. All of those state claims were removed from the third amended complaint. *Id.*, ECF Nos. 50 (December 15, 2023 motion for leave to amend), 59 (January 16, 2024 order granting leave to amend). The ADEA claim was the only remaining claim in the third amended complaint. *See id.*

10

In May 2024, the Colorado district court denied the motion to dismiss but found it appropriate to transfer the case to the U.S. District Court for the Southern District of New York. *See id.* at PageID.4-7. Though the Colorado district court discussed personal jurisdiction in its opinion, it did so to show that its concerns over that issue supported transfer to New York. *See id.* at PageID.7-15. The Colorado case was thus transferred to the Southern District of New York, where it remains pending. *See* S.D.N.Y. Case No. 24-cv-04314, ECF No. 72. In August 2024, the plaintiffs filed a fifth amended complaint. *Id.* at ECF No. 94. Other than a motion relating to waived defenses, not much has happened in that case since it was transferred. *See generally* S.D.N.Y. Case No. 24-cv-04314.

This Court is now faced with a similar issue as the Colorado court. Where should this case properly be handled? Having reviewed the Tigers' request for dismissal or a stay, and the parties' briefing on this matter (including Plaintiffs' Notice of Facts Properly Recognized as Matter of Judicial Notice), the Court finds oral argument unnecessary and will decide the Motion based on the record before it. *See* E.D. Mich. LR 7.1(f).

## II.

"The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz*, 814 F.3d at 789. Under the first-to-file rule, "when actions involving nearly identical parties and

11

issues have been filed in two different district courts, the court in which the first suit was filed should *generally* proceed to judgment." *Id.* (quotation marks and citations omitted; emphasis in original). The rule serves several purposes, including "encourag[ing] comity among federal courts of equal rank," "conserv[ing] judicial resources by minimizing duplicative or piecemeal litigation, and protect[ing] the parties and the courts from the possibility of conflicting results." *Id.* (quotation marks and citations omitted).

To be duplicative, cases filed in different districts must have "nearly identical parties and issues." *Baatz*, 814 F.3d at 789 (quotation marks and citations omitted). Courts typically evaluate three factors when determining whether to apply the first-to file rule: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Id.* (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)). But "even if these three factors support application of the rule, the court must also determine whether any equitable considerations" warrant *not* applying the first-to-file rule. *Baatz*, 814 F.3d at 789. Those considerations may include whether there is "evidence of inequitable conduct, bad faith, anticipatory suits, or forum shopping." *Id.* (cleaned up).

### III.

The Tigers argue that the Court should apply the first-to-file rule to dismiss Plaintiffs' Complaint or, alternatively, to stay the case until final judgment is entered

against Johnson and Pellant in the New York case. The Court finds that the first-to-file rule applies to this case and finds it appropriate to stay the case rather than dismiss it.

An analysis of the first-to-file rule factors warrants this result, and the Court will address each in turn.

**A.   Chronology of Events**

There is no dispute this first factor is satisfied. "The dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed." *Baatz*, 814 F.3d at 790 (citation omitted). Plaintiffs filed their Complaint in this case on December 27, 2023. E.D. Mich. Case No. 23-cv-13288, ECF No. 1. The original complaint in the Colorado-New York case was filed June 21, 2023. D. Colo. Case No. 23-cv-01563, ECF No. 1. This factor therefore favors applying the first-to-file rule.

**B.   Similarity of the Parties**

The second factor is also satisfied. "The first-to-file rule applies when the parties in the two actions substantially overlap, even if they are not perfectly identical." *Baatz*, 814 F.3d at 790 (cleaned up). "[F]or purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified." *Id.* (citations omitted).

Plaintiffs in this case are Johnson and Pellant, and the Tigers are the defendant here. Johnson and Pellant were also plaintiffs in the Colorado case (and are plaintiffs in the New York case), and the Tigers are one of the many defendants in the Colorado-New York case. Here, the parties not only substantially overlap, but they are also perfectly identical, with the addition of other plaintiffs and defendants. Consequently, the second factor also favors applying the first-to-file rule.

C.     **Similarity of the Issues**

Like the first two factors, the third factor favors applying the first-to-file rule. When considering the third factor, "the issues need only to substantially overlap in order to apply the first-to-file rule." *Baatz*, 814 F.3d at 791 (citations omitted). That is, "[t]he issues need not be identical, but they must 'be materially on all fours' and 'have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Id.* (quoting *Smith v. Sec. & Exch. Comm'n*, 129 F.3d 356, 361 (6th Cir. 1997) (en banc)). The issues in the Colorado-New York and Michigan cases meet this threshold. The issues involve claims of age discrimination against professional baseball scouts. And many of the facts alleged in the Michigan complaint are identical to those in the Colorado-New York complaint.

Plaintiffs assert that their claims in the Michigan case are for "wrongful discharge" under the ADEA, while the claims asserted in the Colorado-New York case are for "refusal to hire" in violation of the ADEA. E.D. Mich. Case No. 23-cv-

14

13288, ECF No. 10, PageID.136-137. True, Plaintiffs' Count I in this case is for wrongful termination under the ADEA. *See id.*, ECF No. 1, PageID.8-9. But Counts II and III relate to Plaintiffs' inability to find "other employment" despite diligent efforts. *Id.* at PageID.9-11. And Count II in particular is titled, "Post-Termination Employment Interference in Violation of the ADEA." *Id.* at PageID.9. The allegations under that claim include a summary of caselaw outside this Circuit that post-termination conduct by a former employer is actionable if it interferes with future employment. *Id.* at PageID.9-10. That sounds an awful lot like the plaintiffs' Count I "refusal to hire" claim in the Colorado-New York case. *See* D. Colo. Case No. 23-cv-01563, ECF No. 1, PageID.29 (alleging that the defendants violated the ADEA by "systematically refusing to consider Older Scouts for reemployment in other Club Scout positions"); S.D.N.Y. Case No. 24-cv-04314, ECF No. 94, PageID.39 (alleging the same). Thus, the Court is not persuaded by Plaintiffs' argument that these are different issues. To the contrary, these claims all require an analysis under the ADEA. Plus, the issues don't have to be identical. *See Baatz*, 814 F.3d at 791. Accordingly, the Court finds that the three first-to-file factors are all satisfied.

D.   **Equitable Considerations**

Even if the three first-to-file factors are satisfied (like the Court finds here), courts must still determine if equitable considerations warrant applying the rule.

15

*Baatz*, 814 F.3d at 789. "[T]he first-to-file rule is not a mandate directing wooden application of the rule without regard to extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Baatz*, 814 F.3d at 792 (quotation marks and citation omitted). Yet "deviations from the rule should be the exception," not "the norm." *Id*. Still, district courts retain discretion "to decline to apply the first-to-file rule." *Id*. at 793 (citations omitted).

Here, equitable considerations favor applying the rule. The parties present no evidence or suggestion of extraordinary circumstances, inequitable conduct, bad faith, or forum shopping. The Tigers note that Plaintiffs "[c]learly . . . intended to prosecute these claims in the Colorado action and presumably only filed this suit under the mistaken belief that they were required to have the appropriate Notice of Rights before they could sue." E.D. Mich. Case No. 23-cv-13288, ECF No. 6, PageID.34. But mistake hardly rises to the level of an extraordinary circumstance, inequitable conduct, bad faith, or forum shopping. *Baatz*, 814 F.3d at 792.

However, the Court is concerned about the waste of judicial and party resources, and the possibility of conflicting results. As the Tigers point out, having both cases proceed will lead to duplicative discovery and motion practice. It doubles the time, resources, and money the parties will have to expend. And it doubles the time and resources of two federal courts instead of one. More concerning is that decisions in one case could affect decisions in the other. This is especially true when

16

the New York case—a class action with numerous plaintiffs and defendants—may progress at a different pace than the Michigan case—a case with two plaintiffs and one defendant. Avoiding conflicting result is a primary concern of the first-to-file rule. *See Baatz*, 814 F.3d at 789.

Additionally, the case here is in its infancy. Nothing substantively has been done on this matter and having two courts proceed with the substance of these claims at the same time would be inefficient and waste, not conserve, judicial resources. As a result, the Court finds the first-to-file rule applicable.

**E.     Whether Dismissal is Warranted**

The Tigers ask the Court to stay the case if it is "not inclined to dismiss" it. E.D. Mich. Case No. 23-cv-13288, ECF No. 6, PageID.34 n.5. The Court finds dismissal inappropriate and concludes that staying the case best serves the principles of the first-to-file rule.

Once a court determines that the first-to-file rule applies in a later-filed case, it has discretion to transfer, stay, or dismiss that later-filed case. *See Wizie Com LLC v. Webjet Marketing North Am., LLC*, No. 17-cv-11920, 2017 WL 4707487, *6 (E.D. Mich. Oct. 20, 2017). Though dismissal "is an option in certain situations," the Sixth Circuit has noted that "'a district court can abuse its discretion by dismissing a case under the first-to-file rule when doing so could adversely affect a party's interests.'" *Heyman v. Lincoln Nat'l Life Ins Co.*, 781 F. App'x 463, 478 (6th Cir. 2019) (quoting

17

*Baatz*, 814 F.3d at 793-94). Dismissing Plaintiffs' federal claims could adversely affect their interests because of the limited timeframe within which they must file suit after receiving a notice of their right to sue. The Court therefore finds it inappropriate to dismiss Plaintiffs' claims.

Yet the Court can also stay or transfer the case. *See Wizie Com*, 2017 WL 4707487 at *6. And here, the Court finds staying the case to be the better option. "A stay may be preferred when there are uncertainties regarding the first-filed case." *Steavens v. Elec. Data Sys. Corp.*, No. 07-cv-14536, 2008 WL 5062847, *3 (E.D. Mich. Nov. 25, 2008) (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628-29 (9th Cir. 1991)). Here, there are uncertainties about the New York case. Currently pending before the New York court is the plaintiffs' motion asking the court to deem as waived the defenses of a lack of personal jurisdiction and improper venue. *See* S.D.N.Y. Case No. 24-cv-04314, ECF No. 89. The defendants' response suggests that if the New York court deems those defenses *not* waived, the defendants will seek dismissal of the "non-New York Defendants"—which includes the Tigers—on the grounds of lack of personal jurisdiction and improper venue. *See id.*, ECF No. 91, PageID.6. Addressing that issue would require additional briefing, and how the New York court would resolve it is uncertain. Accordingly, the Court finds it appropriate to stay this case instead of transferring it.

18

## IV.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 6).

**IT IS HEREBY ORDERED** that these proceedings are **STAYED** and the Court will hold the complaint in abeyance pending resolution of Case No. 1:24-cv-04314 in the United States District Court for the Southern District of New York.

**IT IS FURTHER ORDERED** that Plaintiffs must, within 60 days of the resolution of Case No. 1:24-cv-04314 in the United States District Court for the Southern District of New York, either file a motion for reinstatement of this case or voluntarily dismiss it. The Court grants Plaintiffs leave to file the motion for reinstatement if they choose that direction.

To avoid administrative difficulties, the Court **ORDERS** the Clerk of Court to **CLOSE** this case for statistical purposes only. Nothing in this order or in the related docket entry shall be considered a dismissal or disposition of this matter. *See Esters v. Schiebner*, 591 F. Supp. 3d 218, 222 (E.D. Mich. 2021); *Thomas v. Stoddard*, 89 F. Supp. 3d 937, 943-44 (E.D. Mich. 2015).

**IT IS FURTHER ORDERED** that upon receipt of a motion for reinstatement of the case following resolution of Case No. 1:24-cv-04314 in the United States

19

District Court for the Southern District of New York, the Court will order the Clerk to reopen this case for statistical purposes.

      **IT IS SO ORDERED.**

Dated: January 13, 2025　　　　　　　　　　s/Brandy R. McMillion
     Detroit, Michigan　　　　　　　　　　　　HON. BRANDY R. MCMILLION
　　　　　　　　　　　　　　　　　　　　　　United States District Judge